**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ANTHONY MARTIN GROVES** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-7431** |
| **MARLIN GUSMAN, ET. AL** | **SECTION "N"(4)** |

**PARTIAL REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**.

On January 7, 2010, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for the defendants participating by conference telephone call.[2] Upon review of the entire record, the Court has determined this matter can be disposed of without an evidentiary hearing.

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure. *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. No. 11. The plaintiff was sworn prior to testifying. The hearing was digitally recorded.

**I.**     **Factual Summary**

   **A.**     **The Complaint**

The plaintiff, Anthony Martin Groves ("Groves"), is an inmate incarcerated in the House of Detention of the Orleans Parish Prison ("OPP"). He filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against Marlin Gusman, the Sheriff of Orleans Parish, Chief Weaver, Sergeant Johnson, Officer Crump, and Charles Foti complaining about the conditions of his confinement.

Groves alleges that each tier of the prison has a "tier rep." He contends that tier representatives are *Officers* that operate like police *Officers*. He complains that the tier representatives decide the amount of food and supplies that an individual receives. He contends that the individuals chosen to serve as tier representatives are the individuals "who can beat everyone up and keep order." Groves further complains that none of the tier representatives are Caucasian. He contends that white inmates only receive half portions of their food. He further complains that he has been beaten up and threatened by the prison staff.

He complains that the living conditions are unsanitary for animals and that he has been denied the right to practice his religion. Additionally, he alleges that rats crawl in his cell and "eat [his] store." He seeks damages for the problems he has experienced on the tier. He points out that he has spent a lot of time on the tier and that he would like his compensation to be retroactive. He seeks $200,000 if this action does not proceed forward as a class action. However, if this action is certified as a class action lawsuit, he seeks $10 million. He also states that he does not want to be retaliated against.

**B.     *Spears* Hearing**

The *Spears* hearing in the matter took place on January 7, 2010. During the hearing, Groves testified that in the jail, he had altercations with Officer Crump and Officer Johnson. Groves contends that both Officers performed a shakedown and made Groves and other inmates put their hands on their heads. The Officers then allegedly beat the inmates until they told the Officers "what they wanted to hear."

Groves also testified that in another instance, he had a suicidal cell mate. The Officers came to Groves's cell to get his cell mate and proceeded to beat up Groves before they left.

Groves contends that he is not in danger of being beaten by the Officers because he has been moved to a different floor. He was moved because he is a witness in a murder case. At the *Spears* hearing, he testified that he had not seen Crump for about fifteen days.

Groves contends that he filed a grievance but that he never got it back. He contends that as part of his relief, he would like to have the grievance process revised to include three steps.

Groves testified that he included Foti as a Defendant because he was the Sheriff when he was previously incarcerated in 2003-2004. Groves contends that he filed this suit as a precaution against Foti because he was unfamiliar with the § 1983 laws. He further testified that the issues relating to the tier representatives began when he was incarcerated in 2003-2004 when Foti was the Sheriff. He further contended that the black inmates always get to eat meat whereas the white inmates do not. He also reiterated that there are no white tier representatives.

He further testified that he is currently in jail as a result of a parole violation for automobile theft. However, he says that he should not have been on parole because he was supposed to serve four years with no good time. However, he was released on parole after serving two years. He

testified that he was released for a year and then his parole was revoked. He testified that he was in jail as a result of a parole violation for automobile theft. He conceded that the parole issue is not a real issue in this lawsuit and that he was separately filing a habeas corpus action.

Groves testified that Gusman had no direct involvement with any of the allegations. He also testified that he filed suit against Chief Weaver because he is the Warden of the jail. He testified that he did not know if he needed to name Chief Weaver as a Defendant but did so as a precautionary tactic.

He testified that he is a practicing Santarian[3] which he described as a form of voodoo. He testified that he has no opportunity to worship and there is no minister or priest. He complains that none of the prisoners are allowed to practice their religion. When he complained about not being able to practice Santaria, he was informed that the prison was unfamiliar with his religion. He contends that in federal prison, Santaria is a recognized religion and he was permitted to worship in a chapel once a week in a federal prison. He contends that there are other Santarians in the jail and that he practices Santaria periodically.

Groves testified that his claim regarding his legal mail is no longer an issue because it has been resolved. He also testified that his complaints as to the unsanitary conditions of the facilities have been resolved because the prison cleaned the mildew in the showers. He testified that the food practices remain unsanitary because the food is served near the showers.

---

[3]The Santerian religion, which originated in the 19th century, teaches that every individual has a destiny from God, which is fulfilled with the aid and energy of the *orishas*. The basis of the Santerian religion is the nurture of a personal relationship with the *orishas*. One of the principal forms of devotion is an animal sacrifice. According to the Sanerian teachings, the *orishas* are powerful but not immortal and they depend on the sacrifices for survival. The religion was brought to the United States most often by exiles from the Cuban Revolution and it is estimated that there are at least 50,000 practitioners in South Florida today. 13 Encyclopedia of Religion 66 (M. Eliade ed. 1987); 1 Encyclopedia of the American Religious Experience 183, ( C. Lippy & P. Williams eds. 1988); *Church of the Lukumi Babalu Aye, v. City of Hialeah,* 505 US 520 (1993).

Groves testified that he filed claims against the Orleans Parish Prison because that is where he is currently incarcerated. He further testified that he does not care about money and if the conditions were changed, then he would be satisfied. He testified that he felt like he needed to do something.

## II.     Standards of Review for Frivolousness

Title 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle,* 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce,* 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319 (1989); *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers,* 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992); *Neitzke,* 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy,* 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus,* 976 F.2d 268, 269 (5th Cir. 1992).

**III.     Analysis**

    **A.     Conditions of Confinement**

Groves initially complains that the conditions of the House of Detention are unsanitary. During the *Spears* hearing, Groves conceded that the unsanitary conditions in the shower has been resolved since the prison fixed the mildew problem by painting over it.

Groves continued to complain however that unsanitary practices continue to exist regarding the preparation of food. He complained that the prison officials serve the food in a manner that is not sanitary by serving it near the shower area. He does not allege that the conditions caused him any harm.

The Eighth Amendment provides protection with respect to "the treatment a prisoner receives in prison and the conditions under which he is confined." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). However, the constitutional prohibition against the infliction of cruel and unusual punishment "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Eighth Amendment protection from cruel and unusual living conditions has both objective and subjective components. First, deprivations must be objectively serious in the sense that they violate contemporary notions of decency. *Rhodes v. Chapman*, 452 U.S. 337 (1981). Second, the plaintiff must show that subjectively the prison officials acted with a sufficiently culpable state of mind. *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir.), *cert. denied*, 510 U.S. 949 (1993). The Supreme Court has held that prison officials cannot be held liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825 (1994).

Prisons and detention facilities are required to provide "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *See French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985), *cert. denied*, *Owens v. French,* 479 U.S. 817 (1986). A minor sanitation restriction or problem, although admittedly unpleasant, does not amount to a constitutional violation. *Whitnack v. Douglas Cnty.*, 16 F.3d 954, 958 (8th Cir. 1994); *Knop v. Johnson*, 977 F.2d 996, 1013 (6th Cir. 1992); *Robinson v. Ill.State Corr. Ctr.*, 890 F. Supp. 715, 720 (N.D. Ill. 1995).

Having reviewed the "totality of the circumstances," *McCord v. Maggio*, 910 F.2d 1248 (5th Cir. 1990), the Court finds that this claim caused the plaintiff only discomfort or inconvenience and simply do not rise to the level of a constitutional violation. The plaintiff has not identified any "basic human need" which he was denied for an unreasonable period of time. *See Woods v. Edwards* 51 F.3d 577, (5th Cir. 1995). As such, the plaintiff's claims regarding the general conditions of his confinement should be dismissed for failure to state a constitutional claim.[4]

### B.   Selection of Tier Representatives

Groves alleges that the selection process for tier representatives is discriminatory. He alleges that the biggest most physically threatening African American inmate gets selected as a tier representative. He complains that there are no Caucasian tier representatives in the House of Detention facility at Orleans Parish Prison. He acknowledges that while he named Sheriff Gusman and Chief Weaver, he had no knowledge that they were involved in the selection of the tier representatives but named them as Defendants because they are responsible for the jail. Additionally,

---

[4]Further, he fails to show any physical injury resulting from the alleged conditions. There is no federal constitutional right to be free from emotional distress, psychological stress, or mental anguish, and, hence, there is no liability under § 1983 regarding such claims. *See Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir.1985), *cert. denied*, 480 U.S. 916 (1987); and *Rodriguez v. Comas*, 888 F.2d 899, 903 (1st Cir.1989).

Groves indicates that he did not know whether he needed to name either Gusman or Weaver but that he did so as a precautionary tactic.

Therefore, Groves' claims relating to the selection of tier representatives against Gusman and Weaver are in the nature of a respondeat superior theory which is not an appropriate basis for relief under § 1983. *Bagley v. Scott*, 132 F.3d 1455 (5th Cir. 1997). A supervisory official cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). Moreover, a state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120 (5th Cir. 1980).

Supervisory liability may exist "without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). An official policy is:

1. a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [government entity] . . . or by an official to whom the [entity] ha[s] delegated policy-making authority; or

2. A persistent, widespread practice of . . . officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [the entity's] policy.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992). A plaintiff may also establish a custom or policy based on an isolated decision made in the context of a particular situation if the decision was made

by an authorized policymaker in whom final authority rested regarding the action ordered. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988); *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996).

In this case, Groves has not alleged that Sheriff Gusman or Chief Weaver implemented any policy which denied him the opportunity to be considered for the tier representative position in the facility. Furthermore, Groves has not established that the tier representative selection process as alleged is unconstitutional. Therefore, the claims against Sheriff Gusman and Chief Weaver with respect to the selection of the tier representatives should be dismissed for failure to state a claim for which relief may be granted.

### C. Former Sheriff Foti

Groves testified that he filed suit against former Sheriff Foti because he was the sheriff when Groves was previously incarcerated in 2003-2004. He testified that he did not know anything about Title 42 U.S.C. Section 1983 and filed the claim against Sheriff Foti as a precaution. He complains that the problem with the tier representative situation began when Sheriff Foti was the Sheriff and that the process was racist because African American inmates always get meat for their food when the white inmates do not.

Because there is no federal statute of limitations for § 1983 claims, the Court looks to the forum state's statute of limitations for personal injury claims. *Board of Regents of Univ. of New York v. Tomanio*, 446 U.S. 478, 483 (1980) (citing 42 U.S.C. § 1988); *Wilson v. Garcia*, 471 U.S. 261, 275 (1985) (§ 1983 actions are best characterized as personal injury actions); *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998) (citing *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994)). In Louisiana, personal injury claims are governed by La. Civ. Code Art. 3492, which

provides for a prescriptive period of one year from the date of injury or damage.[5] *See Jacobsen*, 133 F.3d at 319 (citing *Elzy v. Roberson*, 868 F.2d 793, 794 (5th Cir. 1989)).

For purposes of calculating the limitations period, a § 1983 cause of action accrues when the plaintiff knows or has reason to know of the injury which forms the basis of his action. *Id.*, at 319; *Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998). In this case, Grove's cause of action arising out of the alleged discriminatory tier representative selection process began during Foti's leadership of the prison in 2003-2004. Applying the prescriptive period, Groves had one year from that date, or either 2004 or 2005, to timely file his § 1983 petition.

The record in this case reflects that Grove's complaint was filed by the Clerk of Court on November 19, 2009, when pauper status was granted. In the *pro se* prisoner context, however, the date when prison officials receive the complaint for delivery to the court is considered the time of filing for limitations purposes. *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995); *see also Thompson v. Raspberry*, 993 F.2d 513, 515 (5th Cir. 1993) (pro se prisoner's objection to a report and recommendation deemed filed when given to prison officials for mailing). In this case, Groves submitted his handwritten complaint on October 31, 2009.

As noted above, Grove's claims brought in this § 1983 action accrued by either 2003 or 2004 when Groves was previously incarcerated and Foti was the sheriff. However, he failed to file his suit in accordance with La. Civ. Code art. 3492 as applicable to § 1983 *et seq*. His complaint against Sheriff Foti is filed either four or five years too late and should be dismissed as frivolous for that reason.

---

[5]La. C.C. Article 3492 provides that: "[d]elictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage."

### D. <u>Excessive Force</u>

Groves alleges that while incarcerated in the House of Detention, he was beaten by *Officers* Crump and Johnson. Groves testified during the *Spears* hearing that the *Officers* came down to his cell to conduct a shake down. He complains that the *Officers* hit him on his head and beat him and the other prisoners until they told them what they wanted to hear. He does not specify when this incident occurred.

Groves also testified that there was another instance in which his cell mate attempted to commit suicide. He testified that Crump came to the cell and then began to beat him up for awhile and then left. He did not indicate that Johnson physically hit him. Presumably, Johnson was present and failed to protect him from Crump. He testified that since the incident, he is no longer in danger of being beaten because he has been moved to the tenth floor. Groves clarified that the reason he was transferred to the tenth floor is because he is a witness in a murder case.

The United States Fifth Circuit Court of Appeals has established a three-part test is to be used when evaluating a plaintiff's entitlement to relief from the use of excessive force under 42 U.S.C. § 1983. Further, "a prisoner's right to bodily integrity and to be free from attack by prison guards is a clearly established constitutional right." *Cooper v. Belcher*, No. 08-1599 c/w 08-2536 c/w 09-0662 c/w 09-0667 c/w 09-0754 c/w 09-0961, 2010 WL 3359709 (D. Co. Aug. 25, 2010) (citing *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993).

To prove this type of Eighth Amendment violation, the plaintiff must show: (1) some injury; (2) that resulted directly and only from a use of force that was clearly excessive to the need; and (3) the excessiveness of which was objectively unreasonable. *Fontenot v. Cormier*, 56 F.3d 669, 674 (5th Cir. 1995); *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996); *Thompson v. City of Galveston*, No. G-97-246, 1997 WL 591134, at *5 (S.D. Tex. Sept. 19, 1997) (Kent, J.). In evaluating excessive

force claims, courts may look to the seriousness of the injury to determine "whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley v. Albers*, 475 U.S. 312, 321 (1986); *Brown v. Lippard*, 472 F.3d 384, 386-87 (5th Cir. 2006). An injury is insufficient to support an excessive force claim where there is no physical injury or where it is extremely minor. *See e.g.*, *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999) (no injury); *Gomez v. Chandler*, 163 F.3d 921, 922 (5th Cir.1999) (cuts, scrapes, contusions to the face, head, and body not enough); *Siglar v. Hightower*, 112 F.3d 191 (5th Cir.1997) (bruise caused by having ear twisted considered *de minimis*).

When determining the reasonableness of the force used, the core inquiry is whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Baldwin v. Stalder*, 137 F.3d 836, 838 (5th Cir. 1998). Determining a motive is not part of the Court's inquiry while intent is a factor to be considered. *Hudson*, 503 U.S. at 7. Some of the relevant objective factors in this inquiry include: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the defendant; and (5) any efforts made to temper the severity of the forceful response. *Id*. at 838-39. Thus, the application of force is considered excessive by constitutional standards where it is "grossly disproportionate to the need for action and inspired by malice." *Valencia v. Wiggins*, 981 F.2d 1440, 1447 (5th Cir. 1993).

Applying these standards, the Court notes that according to the *Spears* hearing testimony of Groves, despite the fact that he said that he was hit by the Officers, Groves does not allege any physical injury. *Jackson v. Culbertson,* 984 F.2d 699, 700 (5th Cir.1993) (excessive force claim

12

dismissed as frivolous when prisoner suffered no injury); *Jefferson v. City of Hazelhurst*, 936 F.Supp. 382, 386 (S.D.Miss.1995) ("To state a cause of action under Title 42 U.S.C. § 1983, the plaintiff must plead . . . that there exists a direct causal connection, . . . without intervening factors, between the deprivation and some injury to plaintiff.") Groves failure to allege any injury renders his claim of excessive force frivolous.

### E.     Legal Mail.

Groves originally alleged that the defendants violated his privacy rights regarding his legal mail. During the *Spears* hearing, however, he withdrew this claim indicating that it was no longer an issue.

### F.     Freedom of Religion

Groves generally alleges that the prison officials violate his right of freedom of religion. He testified during the *Spears* hearing that he is a Santarian and that he would like the opportunity to worship in a chapel and that there is no such facility in the prison. He indicated that if he worshiped in his cell, the other prisoners would think that he was insane.

Prisoners retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987); citing *Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). Incarceration, however, brings about the necessary withdrawal or limitation of these rights. *Id.* "The constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large." *Shaw v. Murphy*, 532 U.S. 223, 121 S.Ct. 1475, 149 L.Ed.2d 420.

The U.S. Supreme Court set forth the general test of prison restrictions on an inmate's First Amendment rights in the case of *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

*Turner* provides that a restriction is valid "if it is reasonably related to legitimate penological interests." *Id.* at 89. In making a determination as to whether the impingement meets the penological interest standard, the Court must employ the four factor test set forth in *Thornburgh v. Abbott*, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). The factors are as follows: (1) Whether the penological objective underlying the regulation at issue is legitimate and neutral, and that the regulation is rationally related to the objective; (2) whether there are alternative means of exercising the rights that remain open to inmates; (3) what impact the accommodation of the asserted constitutional right will have on others (guards and inmates) in the prison; and (4) whether there are ready alternatives that fully accommodate the prisoner's rights at de minimis cost to valid penological interests. *Id.* at 414. Courts need not consider each factor, however, and do not have to weight the factors evenly. *Scott v. Mississippi Dep't of Corrections*, 961 F.2d 77, 80 (5th Cir.1992).

Grove's complains that because there is no place of worship for him or anyone who desires to practice his religion, he would have to worship in his cell which would make the other inmates think that he is crazy. He claims that he submitted a grievance requesting the opportunity to worship in a chapel but his request remains unanswered.

Groves does not, however, indicate which Defendant has allegedly inhibited his right to worship. However, he implicitly indicates that his rights have been violated pursuant to a policy that prevents himself and other inmates from freely practicing their religion. Therefore, it is implicit in his allegations that Chief Weaver and Sheriff Gusman are the Defendants as to this claim as the individuals who presumably implemented and have carried out the alleged policy. As described in Section III(B), above, respondeat superior liability may exist regardless of personal participation if the supervisory officials implemented a policy which violates constitutional rights. *Thompkins v. Belt*, 828 F.2d at 304.

Here, Groves implicitly complains about a prison policy which inhibits his, and other inmates' ability to freely exercise their religion. As a result, his Free Exercise allegations against these Defendants should be permitted to proceed.

However, the Court notes that it is unclear from the record the date in which his present incarceration commenced. As described in Section III(C), above, because there is no federal statute of limitations for Section 1983 claims, Louisiana's one-year prescription period applies. Therefore, the only Free Exercise claims which should be permitted to proceed are those which accrued one year prior to the filing of this action, which was filed on October 31, 2009.

## IV.     Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Grove's § 1983 claims should be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e) and § 1915A and 42 U.S.C. § 1997e as follows:

- The **Conditions of Confinement** claim against Sheriff Gusman and Chief Weaver should be **DISMISSED** as frivolous for failure to state a Constitutional claim.

- The **Equal Protection** claim against Sheriff Gusman and Chief Weaver regarding the selection of tier representatives should be **DISMISSED** as frivolous for failure to state a claim.

- Any **Free Exercise** claim which accrued prior to October 31, 2008, should be **DISMISSED** as time-barred.

- The **Excessive Force** claim against Officer Crump and Officer Johnson should be **DISMISSED** as frivolous, for failure to allege a physical injury.

- All claims against former Sheriff Charles Foti should be **DISMISSED** as time-barred.

**ITS IS FURTHER RECOMMEND** that Groves's claim alleging the **violation of his right to privacy** regarding his legal mail be **DISMISSED** based upon the voluntary representation of Groves.

15

**IT IS FURTHER RECOMMENDED** that the claims against Sheriff Gusman and Chief Weaver regarding the alleged **violation of his First Amendment Right to the Free Exercise of Religion** which accrued after October 31, 2008 as alleged are not frivolous and shall proceed forward.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[6]

New Orleans, Louisiana, this 3rd day of March, 2011.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[6]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.