UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANTHONY MARTIN GROVES** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-7431** |
| **MARLIN GUSMAN** | **SECTION "N"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**.  On January 7, 2010, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for the defendants participating by conference telephone call.[2]  Upon review of the entire record, the Court has determined this matter can be disposed of without an evidentiary hearing.

---

[1] 766 F.2d 179 (5th Cir. 1985).  The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims.  The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. No. 11.  The plaintiff was sworn prior to testifying.  The hearing was digitally recorded.

## I. Factual Summary

### A. The Complaint

The plaintiff, Anthony Martin Groves ("Groves"), was an inmate incarcerated in the House of Detention within the Orleans Parish Prison system ("OPP") at the time of the filing of this *pro se* and *in forma pauperis* complaint. Groves filed this complaint pursuant to 42 U.S.C. § 1983 against Orleans Parish Sheriff Marlin Gusman, Chief Weaver, Sergeant Johnson, Officer Crump, and former Orleans Parish Criminal Sheriff Charles C. Foti, challenging the conditions of his confinement.

Groves alleges that certain inmates become "tier representations" or tier representatives and are given authority over other inmates, including the amount of food and supplies provided to each inmate. He contends that the inmates who become tier representatives are the ones "who can beat everyone up and keep order."

He further complains that none of the tier representatives are white or Caucasian. He complains that the white inmates only received half of the food portions from the tier representatives. He also complains that he has been beaten and threatened by prison staff, and the conditions are unsanitary and unfit for animals. He alleges that rats crawl in his cell and "eat [his] store."

He also alleges that he had been denied the right to practice his religion. He indicates that he will provide more information when he accesses case law.

As relief, Groves seeks to recover $200,000 in damages and $10 million if the case is converted into a class action. He also requests an order directing the prison to feed the inmates in

a different manner, such as to dispense food by machine and do away with tier representatives and staff. He also requests that there be no retaliation against him.

### B.     The *Spears* Hearing

Groves testified that in the jail, he had altercations with Officer Crump and Officer Johnson. He stated that both Officers performed a shakedown of his cell, and they made him and other inmates put their hands on their heads. The Officers then allegedly beat the inmates until they told the Officers "what they wanted to hear."

Groves also testified that in another instance, he had a suicidal cellmate. The Officers went to his cell to get the other inmate, and they beat Groves before they left.

He further indicated that the black inmates were always fed their meals, whereas the white inmates were not. He also reiterated that there are no white tier representatives.

Groves indicated that he was moved to another floor, and was not in danger of being beaten by the Officers. He stated that he was moved because he was a witness in a murder case. At the time of the hearing, he had not seen Crump for more than fifteen days.

He further testified that he is a practicing Santerian[3] which he described as a form of voodoo. He testified that he has no opportunity to worship and there is no minister or priest to assist him at the jail. He complained that none of the prisoners are allowed to practice their religion. When he complained to the prison officials, he was informed that the prison was unfamiliar with his religion.

---

[3]The Santeria religion, which originated in the 19th century, teaches that every individual has a destiny from God, which is fulfilled with the aid and energy of the *orishas*. The basis of the Santerian religion is the nurture of a personal relationship with the *orishas*. One of the principal forms of devotion is an animal sacrifice. According to the Santerian teachings, the *orishas* are powerful but not immortal and they depend on the sacrifices for survival. The religion was brought to the United States most often by exiles from the Cuban Revolution and it is estimated that there are at least 50,000 practitioners in South Florida today. 13 Encyclopedia of Religion 66 (M. Eliade ed. 1987); 1 Encyclopedia of the American Religious Experience 183, ( C. Lippy & P. Williams eds. 1988); *Church of the Lukumi Babalu Aye, v. City of Hialeah,* 508 U.S. 520 (1993).

He contends that in federal prison, Santeria is a recognized religion and he was permitted to worship in a chapel once a week in a federal prison. He also stated that there were other Santerians in the jail and that he practices Santeria periodically.

Groves testified that his claim regarding his legal mail is no longer an issue, because it has been resolved. He also testified that his complaints as to the unsanitary conditions of the facilities have been resolved, because the prison cleaned the mildew in the showers. He further testified that the food practices remain unsanitary, because the food is served near the showers.

Groves also stated that he filed a grievance complaint with the jail, but he never received a response. As part of his relief, he would like to have the grievance process revised to include three steps.

Groves testified that he included former Sheriff Foti as a defendant, because he was the sheriff when he was previously incarcerated in 2003-2004. Groves contends that he named Foti as a precautionary measure, because he was unfamiliar with the § 1983 law. He further testified that the issues relating to the tier representatives began when he was incarcerated in 2003-2004 when Foti was the sheriff.

Groves also testified that Gusman had no direct involvement in the events leading to his claims and allegations in this suit. He also testified that he filed suit against Chief Weaver, because he is the warden at the jail. He acknowledged that he did not know if he needed to name Chief Weaver as a defendant, and did so as a precautionary measure.

He further testified that he is currently in jail as a result of a parole violation for automobile theft. He stated, however, that he should not have been on parole, because he was supposed to serve four years without good-time credits. He, nevertheless, was released on parole after serving only

two years on that original charge. He testified that he had been released for a year when his parole was revoked. He also acknowledged that the parole issue is not part of this lawsuit and that he was separately filing a habeas corpus action.

Groves testified that he does not care about money and if the conditions were changed, then he would be satisfied. He testified that he felt like he needed to do something to correct the problems.

## II.   Procedural Background

On March 3, 2011, the undersigned issued a Partial Report and Recommendation in which it was recommended that all of his claims, except those claims against Gusman and Weaver addressing the denial of his first amendment right to free exercise of his religion, be dismissed with prejudice in part voluntarily and in part as frivolous.[4] The partial report was mailed to Groves at his OPP address of record. The envelope was returned to the clerk of court as undeliverable.[5]

On April 15, 2011, the District Judge adopted the partial report and recommendation and issued an Order and Rule 54(b) Judgment dismissing the frivolous claims with prejudice and reserving the first amendment claim for further consideration.[6] These documents were also mailed by the clerk of court to Groves at his OPP address of record. The envelopes were returned to the clerk of court marked "Return to Sender Not Deliverable as Addressed Unable to Forward."[7] The

---

[4]Rec. Doc. No. 13.

[5]Rec. Doc. No. 14.

[6]Rec. Doc. Nos. 15, 16.

[7]Rec. Doc. Nos. 17, 18.

envelopes also bore handwritten notations indicating that Groves had been sent to the East Baton Rouge Parish Prison.

Upon discovery of the returned mail in the record, the Court's staff determined that Groves had been transferred to and was housed in the East Baton Rouge Parish Detention Center in Scottlandville, Louisiana. The Court issued a Rule to Show Cause to Groves at that address[8] ordering him to show cause why his remaining claims should not be dismissed for failure to prosecute and for failure to inform the Court of his current address as required by L.R. 11.1, L.R. 41.3.1, and the Plaintiff's Declaration appearing on page four, paragraph IV of his Complaint.[9] The envelope was returned to the clerk of court on August 31, 2011, with the notations "Return to Sender No Longer at Parish Prison" and ""Return to Sender Not Deliverable as Addressed Unable to Forward."[10] The Court has been unable to obtain another forwarding address. Groves has not contacted the Court about his case or provided the Court with a current address.

### III.   Analysis

Rule 41(b) of the Federal Rules of Civil Procedure specifically provides that a court may, in its discretion, dismiss a plaintiff's claim for failure to prosecute or for failure to comply with the Federal Rules of Civil Procedure or any order of the court. A Rule 41(b) dismissal is considered an adjudication on the merits. Fed. R. Civ. P. 41(b). In determining whether to dismiss a claim, courts have traditionally considered the extent to which the plaintiff, rather than his counsel, has been responsible for any delay or failure to comply with a rule or order. *See*, *e.g.*, *Silas v. Sears, Roebuck*

---

[8]The clerk also mailed a copy to Groves at the OPP address, which envelope was also returned. Rec. Doc. No. 20.

[9]Rec. Doc. No. 1.

[10]Rec. Doc. No. 21.

*& Co.*, 586 F.2d 382 (5th Cir. 1978); *Ramsay v. Bailey*, 531 F.2d 706 (5th Cir. 1976).  In this case, the plaintiff is without counsel and is responsible for the prosecution of his case.

The record shows that the Court's prior order was mailed to Groves at the most current address known to the Court, and the envelope containing the order was returned as undeliverable. Groves has failed to provide the Court with his current contact information as required by L.R. 11.1. Groves was made aware of his continuing obligation to keep the Court informed of his whereabouts as reflected on page four of his Complaint (Rec. Doc. No. 1), where he signed the Plaintiff's Declaration on October 3, 2009.

Contrary to these mandates, Groves has not notified the Court of his current contact information, and he otherwise has not contacted the Court about his case.  In fact, the record demonstrates that Groves did not provide notice to the Court of his transfers and/or release from jail. The only change of address was obtained by the Court with the assistance of defense counsel and the prison officials.  Groves has not complied with the Court's orders or taken any effort to further prosecute this case.  The Court has given Groves ample time and opportunity to do so.  Accordingly, dismissal of the remainder of Groves's complaint against the remaining defendants is proper under Fed. R. Civ. P. 41(b) and the rules of this Court for his failure to prosecute this case.

**IV.    Recommendation**

It is therefore **RECOMMENDED** that Anthony Martin Groves's remaining first amendment claims pursuant to 42 U.S.C. § 1983 for violation of his first amendment right to free exercise of religion against the defendants, Sheriff Gusman and Chief Weaver, be **DISMISSED WITH PREJUDICE** under Fed. R. Civ. P. 41(b) for the plaintiff's failure to prosecute, all other claims and defendants having been previously dismissed.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[11]

New Orleans, Louisiana, this 17th day of October, 2011.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[11]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.